Aparicio De Camacho v. Mukasey. Counsel, please proceed. Good morning, Your Honors. My name is Rhoda Wilkinson Domingo. Domestic violence victims suffer unspeakable horrors at the hands of their abusers throughout the- Do I have the facts right that she was here ten years before she applied for asylum, or nine? Yes. Nine years? I believe ten, because she applied for cancellation of removal, yes. And how is she going to get around that? Well, we're applying for withholding. We're saying, according to- What? Withholding of deportation, because she's eligible for that. And- You're applying for cancellation. Is that- No. Well, yes, but that- Are you waiving the ten-year thing? I mean, you're not going to argue that? What are you doing with it? I was going for withholding of deportation. Withholding- I can't hear what you're saying. I was going for withholding of deportation and- Withholding of deportation. Withholding of removal and convention against torture. She has to show a probability that she'll be persecuted on one of the five grounds to get withholding? Right. And- Why is it probable that she'll be persecuted on one of the five grounds? And the grounds that we're saying it's a particular social group? You're saying that women generally get beaten by, what, husbands or boyfriends in Mexico? There's statistics, yes, that they- Why doesn't she just not go back to the same man or not go back to any man? She doesn't have to have a husband or boyfriend. Because she was- The guess is that actually there's probably some husbands and boyfriends that beat their wives in America, too. Yes, and there's provisions for that if you're an immigrant and you're married to a man who beat you up. So why doesn't- she's not married to him anymore, right? She's not married to him. She was a domestic worker. Domestic worker. Right. And he was rich, she was poor, and she- Does she have to go back to work for him if she goes back to Mexico? No, but her- she was- the argument is that the rape was persecution. And so she was persecuted in the past, and that rises to the level of past persecution. And the government has not rebutted their presumption- the presumption- The problem that I have with it is, frankly, that it seems ridiculous. A woman was raped by her boss many years ago. And therefore, it is probable that she will be beaten and raped if she goes back to this huge country at our southern border. I don't get it. I don't get the therefore. She'll have a psychological breakdown because of the horrific experience of being raped and being subjected to that. She didn't even say that in her statement. What she said was she doesn't want to go back to Mexico because she doesn't want her children to be poor like Mexican children. Right. That's a perfectly reasonable thing to say. But she doesn't say that she's scared to go back to Mexico because she'll get beaten and raped, though. But she does in her testimony, and the political asylum application is combined with the testimony, and credible testimony is sufficient. And her testimony is that he raped her. She got pregnant by him. He said he would kill her if she told anybody. There's huge statistics that if women report rape or domestic violence, it's ignored. And he said he would kill her. Was that the year that he raped and threatened her? I'm not sure. It was like 1999, or it was more than ten years ago. I was concerned about finding the nexus. Her testimony before the IJ was a very broad group, you know, women, basically. And then later that became more refined. But it seems like it was difficult to find a relationship to one of the protected grounds. So the protected ground is a social group for an Indian woman who's been violated by a dominating male figure. How close did she come to making that argument to the IJ? What was her testimony before the IJ? She mentions that she's Indian. She mentions that he said he would kill her. She mentions that twice in the testimony. And under the doctrine of apparent eligibility, it seems like the immigration judge should have asked a little bit more. I admit it wasn't focused on. The IJ said the respondent has not suggested that race, religion, or nationality played any part in anything that happened to her. So it has to be females as a social group, right? But she does mention that she's seen as an Indian, that she's powerless, that she doesn't have, it's in the transcripts. I don't have them right in front of me. But she said that he would, when she told him that she was pregnant, he said to get rid of it, to have an abortion, and if she didn't, he would kill her. And she says that twice. Is he still alive? I don't know. She was a young woman working for an older man. Right, right. Is he still alive? I don't know. Well, you can't kill her if he's already dead. It's the experience. It's the horrific experience going back to such a terrible memory, past persecution. She raises past persecution. The government's not going to protect her because she's been raped. They can't protect her from a memory. But if the guy is dead, he can't kill her. Well, we don't know that he's dead, Your Honor. Doesn't your burden show that he's alive and she has a real threat? I mean, if you're going to show a probability that something bad is going to happen to her in Mexico, you have the burden of demonstrating that, don't you? If you show past persecution, doesn't the burden shift to the government and they're supposed to show that the country conditions have changed? And the country conditions have not changed. And indigenous poor women who are Indian, who are not the lowest part of the power structure, and they don't have any power to be protected, and that hasn't changed. And Mexico has all kinds of reports how they're trying to change it, and they've passed recent laws. However, nobody's adhering to those laws because it's a very machismo type of society. The IJ characterizes this as an individual criminal act against Abaricio rather than persecution. What's your response to that? Rape is persecution. It's not a sexual act, it's a domination act. And there's lots of reports that show that. I think we've attached some from the State Department and Amnesty International. It's in the brief. Rape commonly results in severe, long-lasting psychological shock or fear or injury of death that can be paralyzing in a sense of profound loss over one's life. Persistent fears, profound feelings of shame, difficulty remembering events, intrusive thoughts of abuse. Counsel, I think we all know how terrible rape is. That's why we put them in prison for a long period of time when people do it. I'm trying to find the lines in her testimony where she says exactly what it is that she's afraid of if she goes back. And I can't find them right now. Can you help me? Okay. I'll look through them and stop right now. Should I push stop? No? I'll just sit down and I'll look for them. Thank you, Counsel. May it please the Court, my name is Anthony Norwood. I'm here today representing the Respondent. I can answer the last question, Your Honor. She didn't say that she feared going back to Mexico. Could you read the lines to me? I'm sorry? Could you read the lines to me of what she says she fears? Well, I have cites written down. But I'm afraid mostly for my daughters, was it, Administrative Record, page 56. Later she said, I'm not so afraid about me anymore as for my children. I don't want them to go through what I went through. That's at AR 65. Let me focus on that, if I may, because to my mind that's the heart of the case. She's a woman who may well have no reason to fear right now. But she's got two girls, 13 and 8, and they're going to go back, as far as I can see, to the same kind of domestic squalor that she was in. And they're going to face the same problem of supporting themselves. And they may well have to go into domestic service. And they're United States citizens. Now, I'm not clear why the government of the United States wants to send two little girls who are United States citizens into a country where the United States State Department says there is this kind of governmental indifference to the treatment of poor women. And that's the heart of the case for me. So tell me why you want to do it. Your Honor, we're enforcing the laws of the United States of America. What you're addressing is that case. I know you come here. You're a lawyer. You've been given the case. Are you from the Justice Department? Yes, Your Honor, I am. From the Immigration Division? Yes. Well, then you probably have a number of these. So you know it. But you know that in the end there is discretion. After we affirm something, you still have discretion. You can win on the law and still use discretion. And I would hope you at least take the message back that at least one member of this Court, it's very surprising that the government is making a big effort to send two small United States citizens back to that kind of environment. The direct response to that question, Your Honor, is her daughters are not being removed from the United States. They are United States citizens. Abandon their children. Is that the U.S. response? They may remain in the United States. Give up your children. I find that a heartless response. I can't believe that's the United States response. They may remain in the United States. Don't believe in the family, is that it? And they may return. Don't we believe in the family? We do believe in the family. All right. We don't want to separate the family. We don't want to separate the family. No, we don't want to separate the family. They'd better go back with it. You're addressing the cancellation of removal application, which is outside this Court's jurisdiction clearly. All right. I'm just giving you some thought. And Congress is aware of this issue, Your Honor. What? Congress is clearly aware of this issue, Your Honor. Yeah. It's been in our cancellation law and our asylum law for years. You see my point of view. I understand your point, Your Honor, and I do appreciate that point. Thank you. We've had how many dissents do we have from the cancellation decisions? I want to point out our exhaustion argument. She withdrew her asylum application. She did not testify about asylum. She proceeded completely on cancellation of removal. She did not. At the end of her testimony about cancellation of removal, her attorney said, wait a minute, I might have an asylum claim. The immigration judge said, well, I'll take a brief on that issue. No testimony on asylum at all. Her attorney submits a brief that suggests gender as a basis for persecution, and that's all. It basically says gender is a possible social group. Then there's no appeal of asylum or withholding to the Board of Immigration Appeals. So the Board only addresses the cancellation issue. And this particular social group of poor indigenous females relegated to work as a live-in domestic is created in the brief to this court. Our argument is that she simply did not exhaust remedies. She did not present that issue to the Board of Immigration Appeals or to the immigration judge. I'll also point out that, as I discussed when I first got up here, she did not establish a subjective fear for herself to return to Mexico. She said she's not afraid. Therefore, Your Honors, I believe that the Board's decision should be affirmed. If there are no further questions, I'll sit down. Thank you, counsel. Good morning. I'm back. Page 53, he says or she explains that she was afraid and that she thought he would kill her, and that's why she left. On page 54, she again says how he said she was going to pay for it. You know, kill me. And then I wanted to point out also that she was testifying in English for part of this, and then they went to Spanish after she gave this paragraph on page 54 that doesn't, it's not really comprehensible. So then she goes back into Spanish, and that paragraph is never translated. But she does tell, the BIA made a decision, so the court has to respect that. What is your response to what your adversary quoted on page 65, I'm not so afraid about me anymore? I think she's a good mother and that she's concerned about her children. I think that she should be concerned about herself. I'm not talking about her feelings. I mean what she says about her fear. It sounds like she's saying I no longer have a fear that I will be harmed. I don't want, then she says I don't want my children to go through what I went through. And then you have this terrible dilemma that Judge Noonan referred to. They can stay with their grandmother, but then they're in the United States and the mother is separated from them, or they can go with the mother and then live in this society that's. It's similar to the arguments in FGM and CAT where the mother has already suffered, but if she takes her children, her female children back to the home country, they could suffer the same kind of thing. So is it persecution for the mother to suffer when she sees her children suffering like that and being subjected to that kind of situation? And I appreciate Judge Noonan's arguments. And it's a good reason for cancellation, but that's not what we're supposed to talk about, right? We're just supposed to talk about withholding because that's what you have jurisdiction for. Okay? Thank you, counsel. Thank you. I wanted to encourage you to adopt the reasoning in the proposed regulations also. You know, the proposed regulations for the matter of R.A. and now the Attorney General MacCasey has told the BIA to start making decisions and not withhold those cases anymore. They've been on hold for about eight years, cases for domestic violence. So I think the regulations that are proposed should be implemented in your decisions. I'm sorry. The status is what? There's regulations that were proposed for domestic violence, but they have never been issued. And they're out there. It's been going back and forth with matter of R.A. I'm not familiar. I don't know R.A. Are you saying these regs have been adopted or have not been adopted? They have not been adopted, but on September 25th, 2008, Attorney General MacCasey said, don't bother waiting for the regulations, and he told the BIA, go ahead and start making your own decisions about these kind of cases. So I think the Ninth Circuit, as a leader of all the other circuits, ought to implement those regulations. Do you have a citation for that, for the Attorney General's statement? Is this in your brief? No, because it just happened. Would you give us a? I can give you a little letter. Why don't you just file something with the clerk? Okay. Thank you. Thank you, Counsel. Aparicio Di Camaccio v. MacCasey is submitted.
judges: Noonan, Kleinfeld, Ikuta